**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CARL DESMOND,

       Petitioner,

v.                                 Case No. 8:14-cv-1400-T-33JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____/

## <u>ORDER</u>

Petitioner Carl Desmond initiated this action by filing a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1). He challenges his convictions entered by the Circuit Court for the Fifth Judicial Circuit in and for Hernando County, Florida, in 2011. Respondent filed a response (Doc. 8), in which it agrees that the petition is timely. Desmond filed a traverse (Doc. 22), an additional reply (Doc. 62), and a supplement to the record (Doc. 63-2). Upon review, the petition must be denied.

## PROCEDURAL HISTORY

In case number CF-2009-2350, Desmond entered a negotiated plea of nolo contendere to one count of fraudulently making an application for a Florida driver's license. (Doc. 10, Ex. A, Vol. 1, p. 60.) In case number CF-2011-0876, he entered a negotiated plea of nolo contendere to three counts of grand theft, one count of fraudulent use of identification information, and one count of fraudulent use of a credit card. (*Id.*) Desmond

was sentenced to concurrent terms of five years on probation[1] for all counts.  (Doc. 10, Ex. A, Vol. 1, pp. 72-74.)  The state appellate court *per curiam* affirmed the convictions and sentences.  (Doc. 10, Ex. F.)

Desmond filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 10, Ex. I.)  The state court granted relief on his substantive double jeopardy claim in case number CF-2011-0876, vacating his conviction for one of the grand theft counts, but summarily denied the remaining claims.  (Doc. 10, Exs. M, N.)  The state appellate court *per curiam* affirmed the postconviction court's order.  (Doc. 10, Ex. O.)

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination

---

[1] Section 2254's requirement that a petitioner be "in custody" is satisfied when the petitioner is on probation.  *See Duvallon v. Florida,* 691 F.2d 483, 485 (11th Cir. 1982) ("In the context of habeas proceedings, the 'in custody' requirement may also be met where a petitioner is on probation, parole, or bail.").

of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529

U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster,* 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

The state appellate court affirmed the order on Desmond's postconviction motion without discussion. The court's decision warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court:

We now hold that review under § 2254(d)(1) is limited to the record that was

before the state court that adjudicated the claim on the merits.   Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster,* 563 U.S. at 181-82.  Desmond bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).   Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

*Strickland*, 466 U.S. at 687.   Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance."   *Id.* at 690.   However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*   Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."   *Id.*

Desmond must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92.  To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694. When the case involves a plea, the prejudice inquiry focuses on whether counsel's deficient performance "affected the outcome of the plea process.  In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."   *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the

circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (citations omitted).  *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered.  466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

### Grounds One, Two, and Four (A)

Desmond asserts that his plea was involuntary.  Desmond's plea colloquy included the following:

THE COURT: Are you under the influence of any drugs or alcohol today that would affect or impair your judgment?

THE DEFENDANT: No, Your Honor.

THE COURT: Have you been determined to be incapacitated or incompetent by any court?

THE DEFENDANT: No, Your Honor.

THE COURT: Have you been treated for mental illness?

THE DEFENDANT: In the past, yes, Your Honor.

THE COURT: Are you currently being treated?

THE DEFENDANT: I suppose I am.  Right?  I am and I'm kind of following up with The Harbor or Springbrook because - -

THE COURT: Are you taking medication today?

THE DEFENDANT: Yes.

THE COURT: What kind of medication are you taking?

THE DEFENDANT: Prozac, BuSpar, and Vistaril.

THE COURT: And do these - - these are prescribed by your physician for you.

THE DEFENDANT: Yes. Dr. Yason.

THE COURT: And do they improve - - do you think they help your judgment or help you better understand by taking the prescription medications?

THE DEFENDANT: I do.  And I believe the pills help.  That's why I always ask Dr. Yason to prescribe them for me when I'm feeling anxious or depressed, but I believe I also benefit from some in-patient treatment at The Harbor or Springbrook because I'm eager to get out of jail, yes.

THE COURT: But do you feel you - - you understand - - you understand everything that we're talking about here, though.

THE DEFENDANT: Yes.  I do, yes.

THE COURT: Okay.  Now, I've been handed a waiver of rights and plea agreement that has your signature on it.  Did you read this agreement, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you discuss it with your attorney?

THE DEFENDANT: Yes, I did, Your Honor.

THE COURT: Do you understand all the terms and conditions of the agreement?

THE DEFENDANT: Yes, Your Honor.  Plea of no contest, five years probation, 75 hours of community service, restitution in the amount of $4,220, continue treatment with The Harbor and - -

[COUNSEL]: Psychiatric treatment.  It's a general to continue psychiatric - -

THE DEFENDANT: Yes.

[COUNSEL]: - - eval and treatment.

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about the agreement, either for your attorney or for the Court?

THE DEFENDANT: I just want to make sure it's no contest and it's five year paper [sic] and I can get out today and follow up with The Harbor or Springbrook.

THE COURT: Okay.  You've already talked to your attorney about that, I'm sure.

THE DEFENDANT: Yes.

THE COURT: Did your attorney tell you the minimum and maximum sentence that you could receive under the charges?

THE DEFENDANT: Yes.  That's why I agreed to no contest and five years probation.

THE COURT: And has he explained to you what it means to enter a plea or enter into a plea agreement?

THE DEFENDANT: Yeah, plea agreement.  Yes, sir.

THE COURT: All right.  After having these discussions, did you sign this agreement freely and voluntarily?

THE DEFENDANT: I did, Your Honor.

THE COURT: Did anybody put any pressure on you or threaten you or coerce you or force you to get you to sign the agreement?

THE DEFENDANT: No, sir, Your Honor.  The only pressure is coming from inside, you know, being in jail for six months without the proper mental health treatment.  It's - - I feel like, you know, I really need to get out of jail and seek that treatment. You can put it in the order that I will attempt to get some in-patient follow-up treatment at The Harbor or Springbrook.

[COUNSEL]: Essentially there's a psych eval and a treatment recommended. It's a condition of the probation.  I would encourage Mr. Desmond and the Court to remain - - remain with that general condition.

THE COURT: You understand that by entering into a plea agreement, you're giving up some Constitutional rights?

THE DEFENDANT: I understand that, Your Honor, and - -

THE COURT: You're giving up the right to have a trial by jury, to be represented by your attorney, to require of the State to prove their case beyond a reasonable doubt, the right to confront and cross-examine witnesses, the right to testify on your own behalf or elect not to testify without that being held against you, the right to have witnesses subpoenaed to come in and testify for you, and you're giving up some of your appellate rights.  Do you understand all of that, sir?

THE DEFENDANT: I understand.  And the reason why I want to follow up with mental health treatment is because I honestly believe, Your Honor, that I stand in this community without any Constitutional rights anyways.  That's why I wanted a change of plea agreement.  Now, maybe The Harbor can help me or Springbrook can help me understand the dynamics of why I think that way, but at least I'm at the point where I'm willing to get the help.

THE COURT: And you understand or let me ask you.  About the rights that I just recited to you, you're waiving those Constitutional rights.

THE DEFENDANT: Yes, in exchange for a plea agreement, no contest, five years probation.

THE COURT: Correct.

THE DEFENDANT: Yes.

THE COURT: All right.  You understand the sentence you're gonna receive.  Apparently you do.  You've recited it back to me already.

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you understand that if there - - if you have any outstanding charges or if there are criminal charges in the future, the plea that you're making here today could have an [e]ffect on your sentence on those charges.

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Are you satisfied with the legal services rendered to you by your attorney?

THE DEFENDANT: From today, his purposes, yes.

[COUNSEL]: Your Honor - -

THE DEFENDANT: For today's purposes, yes.

THE COURT: Okay.  Well, there are - - is there some dissatisfaction for previous representation by this attorney?

THE DEFENDANT: Well, isn't that proof of what you told me?

[COUNSEL]: I believe he does want to touch on any privilege issue and waiver of attorney/client privilege.

THE COURT: All right.  Then for purposes of today, you're satisfied with the legal services - -

THE DEFENDANT: Yes, Your Honor.

THE COURT:  - - you've acknowledged have been provided to you.

THE DEFENDANT: Yes, Your Honor.

. . .

THE COURT: All right.  And you wish to withdraw your previous plea of not

guilty and enter a plea of no contest to the charges?

THE DEFENDANT: That's correct, Your Honor.  I have no choice in the matter.

THE COURT: Well, you have a choice.  You have a right to go to trial.

THE DEFENDANT: I have a right to go to trial, however, if I go to trial at this point, I will lose because [counsel] has not depoed (sic) the witness.  He has not subpoenaed the records that I asked him to subpoena in order to impeach the witness's testimony, so at this point I have no choice but to change my plea.

    And I've accepted the plea agreement from the State and [counsel] has counseled me on it, and I signed it and I just want to get on with life and, you know, abide by the plea agreement and keep following up with The Harbor and reporting to the Court.

[COUNSEL]: Your Honor, this is a best interest nolo contendere plea.

THE COURT: Okay.  And you want - - do you want to the Court to accept your plea agreement?

THE DEFENDANT: I do, Your Honor. . .

. . .

THE COURT: Well, I find that there is a factual basis for the charges.  I find that the defendant has indicated that he's satisfied with the legal services of his counsel for purposes of today's hearing.  And I find - - well, I find that the plea is entered freely and voluntarily, that there's a knowing and intelligent waiver of the Constitutional rights.  I'm going to accept the plea of no contest and the plea agreement.

    Well, before I do that, counsel, do you have an opinion as to whether your client's competent to enter a plea today?

[COUNSEL]: Your Honor, I've always considered Mr. Desmond more than competent.  He understands the legal process.  He understands the rules of the people in the legal process.  He can communicate effectively with me, as his attorney, and assist in his defense.  We've had several counsels since I was appointed in this matter and that's why I basically expedited his evaluation, and that was confirmed by the evaluation in the court file that's sealed.

THE COURT: Do you stipulate that there's a factual basis for the charges?

[COUNSEL]: Yes, Your Honor.  We'd stipulate that the State could go forward to trial and is prepared to prove the facts.

THE COURT: And do you know of any inculpatory or exculpatory evidence, DNA or other physical evidence, or any evidence that would tend to exonerate the defendant?

[COUNSEL]: Your Honor, essentially we've discussed the events and the testimony of Mr. Desmond about the facts that apply in this case, and I believe the defense would be prepared to go forward.

[THE STATE]: Your Honor, just for the record, the State is aware of no DNA which has been tested in this case.  It's a paper trail.

THE COURT: Okay.  All right.
        Then I'm going to accept the plea agreement and the plea of no contest.

(Doc. 10, Ex. A, Vol. 2, pp. 5-17.)

Desmond first asserts that he was forced to enter his plea because he was held in "indefinite involuntary commitment without bail for 5 months" and thus "suffered financial & property losses."  (Doc. 1, p. 7.)  Following his arrest in case CF-2009-2350, Desmond was declared incompetent to proceed in 2010 but was placed on conditional release and directed to obtain outpatient treatment.  (Doc. 10, Ex. A, Vol. 1, pp. 12-17.)  After he was arrested on the new counts charged in case CF-2011-0876 in April 2011, Desmond was held in custody.  The record indicates that he remained in custody with no bond during the time in which he waited to be re-evaluated for competency, and that the court would not consider his motions to set bond until the evaluation took place. (Doc. 10, Ex. A, Vol. 3, pp. 218-19, 228-29; 240; Ex. A, Vol. 4, pp. 211, 216.)  Following the evaluation, the court found Desmond competent on August 24, 2011, and set bond at $12,000.  (Doc. 10, Ex. A, Vol. 3, pp. 247, 255.)  There is no indication from the record that Desmond was released on bond prior to changing his plea and being sentenced on September 22, 2011.

The state court rejected Desmond's postconviction argument that the plea was involuntary:

11.     In his second claim the Defendant alleges that his plea was involuntary.  It appears that the Defendant is asserting that his decision to accept the negotiated plea was only made to avoid being indefinitely incarcerated without bond.

12.     "An involuntary plea is a recognized ground for post-conviction relief, but the defendant has the burden of showing that the plea was not voluntary or knowing." *Young v. State*, 789 So.2d 1160, 1161 (Fla. 5th DCA 2001). The Defendant has not met the burden of demonstrating that his plea was not voluntary or knowing.  Additionally, "relief may be summarily denied where the record conclusively refutes the claim." *Id.*

13.     In the instant case, the plea colloquy between the Court and the Defendant is extensive.  Upon inquiry by the Court, the Defendant stated that he signed the waiver of rights and plea agreement freely and voluntarily. When asked whether anybody pressured him, threatened him, coerced him or forced him to take the plea, the Defendant answered negatively and stated that the only pressure he felt to take the plea was "coming from inside..." The Court inquired whether the Defendant understood that he was giving up his right to trial by jury, the right to be represented, the right to confront and cross-examine witnesses, and the right to have witnesses subpoenaed to testify on his behalf.  The Defendant answered that he understood that he was giving up all of these rights.  When the Court asked the Defendant whether he wished to withdraw his plea and enter a plea of no contest to the charges, the Defendant asserted that he did not have a choice in the matter. The Court informed him that he did have a choice, and that he had a right to take this matter to trial.  The Defendant declined the option of proceeding to trial and agreed with his counsel that he was entering a "best interest *nolo contendere* plea."

14.     Although the Defendant alleges that he was unconstitutionally held without bond and that the plea was his only option to escape incarceration, the Defendant was, in fact, granted a bond after the Court received the Defendant's competency evaluation.  At the arraignment on case number CF-2011-876, the Court ordered that the Defendant be recommitted pending the results of a competency evaluation.  At a pre-trial hearing on August 24, 2011, after the Court adjudged the Defendant competent to proceed, the Defendant was granted bond in case number CF-2011-876.

15.     Although the Defendant also claims that he was threatened with the removal of counsel if he posted bond, the record refutes his allegations.

16.     The record of the Defendant's plea and sentencing reveals that the Defendant was aware of his rights, understood that he was waiving those rights and accepted the negotiated sentence in lieu of taking the matter to trial.   "A guilty plea is [n]ot deemed coerced because a defendant is influenced by a fear of a possibly higher penalty for the crime charged in the event the State is put to its proof..." *Williams v. State*, 316 So.2d 267, 271 (Fla. 1975).   "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."   *Id.* citing *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970).   In the instant case, there is nothing in the record to indicate that the Defendant's choice was anything less than intelligent or voluntary given the alternative courses of action open to him.   Therefore, the claim that the Defendant's plea was involuntary is denied.

(Doc. 10, Ex. M, pp. 2-4) (court's record citations omitted).

The record supports the state court's rejection of this claim.  As the state court noted, the standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).[2]  "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).

Although a defendant's statements during a plea colloquy are not insurmountable, "the representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable

---

[2] Desmond's nolo contendere plea is subject to the same analysis as a guilty plea. *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983) ("The fundamental constitutional consideration when a petitioner challenges his plea is whether it was voluntary.  The rule is the same for pleas of guilty or *nolo contendere*."). *See also Florida v. Royer*, 460 U.S. 491, 495 n.5 (1983) (stating that "[u]nder Florida law, a plea of nolo contendere is equivalent to a plea of guilty.").

barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

The record reflects that Desmond voluntarily entered his plea.  He understood the negotiated sentence he was to receive and the rights he waived by entering his plea.  He also told the court that he chose to enter a plea after discussing possible sentences with counsel,[3] and that he was not forced or coerced into entering the plea.  Furthermore, the colloquy shows that Desmond wanted the court to accept his plea and believed that entering the plea would allow him to receive the mental health treatment he sought.  Desmond has not shown that his statements to the court were false.   He has not established that his custody status resulted in an involuntary plea.

Desmond further alleges that counsel's ineffective assistance rendered his plea involuntary.[4]  Desmond asserts that counsel threatened to withdraw if he posted bond; filed

---

[3] The waiver of rights and plea agreement form Desmond signed reflects that he faced a maximum term of five years in prison on each count.  (Doc. 10, Ex. A, Vol. 1, pp. 60-62.)

[4] Desmond's voluntary plea waives allegations of constitutional deprivations prior to the entry of the plea.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.")  However, Desmond may raise claims of ineffective assistance of counsel to the extent those allegations implicate the voluntariness of the plea itself.  *See Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained.").  *Stano v. Dugger,* 921 F.2d 1125, 1150-51 (11th Cir. 1991) ("The Court allows only challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove 'serious derelictions' in his counsel's advice regarding the plea.") (citation omitted).

a demand for speedy trial but was not prepared for trial and did not demand discovery or perform an investigation; blocked communication with him while he was in the Hernando County Detention Center;[5] and failed to inform him that convictions for the offenses charged in case CF-2011-0876 would violate double jeopardy.

The state court rejected Desmond's allegations of ineffective assistance of counsel when he raised them in his amended motion for postconviction relief:

> 19.    In the instant case, each of the Defendant's claims of ineffectiveness are conclusory allegations that do not establish a prima facie case of ineffectiveness.  Additionally, the thorough nature of the plea colloquy with the Court and the Defendant's explanation of the importance of taking the plea in his motions for postconviction relief, undermine the credibility of any statement the Defendant makes regarding the likelihood of the Defendant deciding not to take a plea and proceed to trial.  Therefore, all Defendant's claims of ineffective assistance of counsel are denied.

(Doc. 10, Ex. M, p. 5.)

The record supports the state court's denial of Desmond's claims.  He fails to demonstrate that counsel performed deficiently for allegedly threatening to withdraw, not preparing for trial, or not communicating with him.  First, the record reflects that during the bond hearing on August 24, 2011, appointed counsel merely argued for a lower bond amount to avoid a situation in which, if Desmond was able to make a higher bond, he would no longer be considered indigent and counsel therefore might be required to withdraw. (Doc. 10, Ex. A, Vol. 3, pp. 253-54.)   Additionally, Desmond does not explain what information counsel would have uncovered had he undertaken further pre-trial preparations. This conclusory claim cannot sustain a claim of ineffective assistance of counsel.  *See*

---

[5] Within Ground Four, Desmond claims that counsel blocked communication with him.  This assertion is interpreted as alleging ineffective assistance of counsel.  For clarity, the Court identifies this allegation as Ground Four(A) and addresses it along with Desmond's other claims of ineffective assistance.  The Court identifies the remainder of Ground Four as Ground Four(B).

*Tejada v . Dugger*,  941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Furthermore, counsel represented to the court that he was "prepared to go forward." (Doc. 10, Ex. A, Vol. 2, p. 17.)   Finally, although Desmond claims that counsel blocked communication from him while he "sought to provide counsel with additional information," Desmond does not provide any specifics in support of his allegation.  (Doc. 1, p. 8.) Accordingly, this claim is also too conclusory to establish that counsel performed deficiently.  *See id.*

Even if Desmond could establish counsel was ineffective for any of these reasons, he fails to establish prejudice.  As addressed above, Desmond explained to the court why he wanted to enter his plea.   In addition, he conveyed to the court that, despite his concerns about counsel's alleged deficiencies, he "accepted the plea agreement from the State and [counsel] has counseled me on it, and I signed it and I just want to get on with life and, you know, abide by the plea agreement and keep following up with The Harbor and reporting to the Court."   (Doc. 10, Ex. A, Vol. 2, pp. 13-14.)   Desmond does not demonstrate a reasonable probability that he would have insisted on proceeding to trial rather than entering his plea.  For the same reasons, assuming Desmond can establish counsel was ineffective for not informing him of the double jeopardy issue that later led the court to vacate the conviction for count one of case CF-2011-0876,[6] he does not show a reasonable probability that he would not have entered the plea but instead would have

---

[6] The postconviction court granted Desmond's substantive double jeopardy claim in case CF-2011-0876 concerning count one, grand theft, and count five, fraudulent use of a credit card.  The court vacated his conviction for that count of grand theft.  (Doc. 10, Exs. M, N.)  There is no indication from the record that any other conviction was affected by the court's ruling.

insisted on proceeding to trial on the remaining counts.

Desmond fails to show that the state court's rejection of the claims raised in Grounds One, Two, and Four (A) was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. Consequently, he is not entitled to relief on Grounds One, Two, or Four(A).

**Ground Three**

As addressed, Desmond was declared incompetent to proceed in 2010.  He remained in custody following his arrest in case CF-2011-0876, and the court did not consider his motions to set bond until after he was re-evaluated for competency to proceed. To the extent this period of confinement involved the state court's 2010 finding of incompetency, Desmond appears to allege that his confinement violated due process because the finding of incompetency was invalid.  Specifically, he asserts that he was "declared incompetent in violation of F.S. 916.12(2) by merely one mental health expert when the law requires two mental health experts." (Doc. 1, p. 7.) He further contends that the court failed to conduct a competency hearing and that Dr. Bursten, whose written report the court cited in declaring Desmond incompetent to proceed in 2010, did not testify before the court.[7]

---

[7] Section 916.12(2), Fla. Stat., provides in relevant part that in determining whether a defendant meets the criteria for competency to proceed:

A defendant must be evaluated by no fewer than two experts before the court commits the defendant or takes other action authorized by this chapter or the Florida Rules of Criminal Procedure, except if one expert finds that the defendant is incompetent to proceed and the parties stipulate to that finding, the court may commit the defendant or take other action authorized by this chapter or the rules without further evaluation or hearing, or the court may appoint no more than two additional experts to evaluate the defendant.  Notwithstanding any stipulation by the state and the defendant, the court may require a hearing with testimony from the expert or experts before ordering the commitment of a defendant.

The argument presented in Ground Three does not raise a federal constitutional claim.   Rather, Desmond alleges that the state court did not comply with Florida law in finding him incompetent to proceed.   Because this claim only involves a question of state law, it is not cognizable on federal habeas review.   *See Branan v.Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief.").   *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas corpus relief will not issue to correct errors of state law); *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.").   That Desmond refers to a "due process" violation does not change the conclusion that his state law claim is not cognizable.   *See Branan*, 861 F.2d at 1508 (federal habeas review's limitation concerning state law questions "is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'") (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976)).   Accordingly, Ground Three does not warrant relief.

**Ground Four (B)**

Desmond alleges that he has obtained newly discovered evidence.   Specifically, he claims that there is "new photographic evidence of alleged victim, Gina Dequevedo, doing her own fraudulent I.R.S. taxes"[8] and that this evidence was found after he pleaded guilty. (Doc. 1, p. 8.)   Because Desmond fails to assert any federal constitutional claim in Ground

---

[8] The factual basis placed on the record at the change of plea hearing provides that in case CF-2011-0876, Desmond took money from the victim by using her Social Security number and other information to obtain her tax return.   (Doc. 10, Ex. A, Vol. 2, pp. 12-13.)   Desmond did not object to the factual basis.

Four (B), it is not cognizable in his federal habeas petition.  *See Branan*, 861 F.2d at 1508.

Even if Desmond had raised a federal claim, it could not provide relief.  Although Desmond does not specifically state that he is actually innocent, he appears to raise the issue of newly discovered evidence to assert his innocence.   But a claim of newly discovered evidence or actual innocence does not present a sufficient basis for federal habeas relief.  *See Schlup v. Delo*, 513 U.S. 298, 315 (1995) ("'[A] claim of innocence is . . . 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'") (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)); *Cunningham v. Dist. Atty's Office for Escambia County*, 592 F.3d 1237, 1272 (11th Cir. 2010) (noting that "this Court's own precedent does not allow habeas relief on a freestanding innocence claim in non-capital cases") (citing *Jordan v. Secretary*, *Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007)); *Williams v. Griswald*, 743 F.2d 1533, 1541 (11th Cir. 1984) ("The 'existence of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus.'") (quoting *Townsend v. Sain*, 872 U.S. 293, 317 (1963)).[9] Accordingly, Desmond is not entitled to relief on Ground Four(B).

**Desmond's Traverse And Additional Reply**

In his traverse and additional reply, Desmond raises additional claims for relief.  He asserts that appellate counsel was ineffective for not raising a double jeopardy claim on

---

[9]  When Desmond asserted newly discovered evidence in his postconviction motion, the state court determined that he failed to present any newly discovered evidence under Florida's test for such evidence articulated in *Sims v. State*, 754 So.2d 657, 660 (Fla. 2000).  (Doc. 10, Ex. M, p. 6.)  To the extent Desmond attempts to challenge the state court's determination, he is not entitled to relief.  A state court's ruling on a matter of state law does not raise a constitutional issue that may provide relief on federal habeas review.  "[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."  *Wainwright v. Goode*, 464 U.S. 78, 83 (1983).

direct appeal, that the state postconviction court erred in not conducting an evidentiary hearing on his motion, and that the count in case CF-2009-2350 is baseless.  Desmond did not raise these allegations in his federal habeas petition, and he is prohibited from raising new claims in these subsequent pleadings.  *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005 ) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'") (citation omitted).  Desmond's claims cannot provide relief.

It is therefore

**ORDERED** that Desmond's petition for writ of habeas corpus (Doc. 1) is **DENIED**.[10] The Clerk is directed to enter judgment against Desmond and to close this case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

It is further **ORDERED** that Desmond is not entitled to a certificate of appealability (COA).  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  *Id.*  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Desmond "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues

---

[10] Desmond  seeks an evidentiary hearing.  An evidentiary hearing is not warranted.  *See Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore  a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record.").

presented were 'adequate to deserve encouragement to proceed further'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Desmond has not made the requisite showing in these circumstances.  Finally, because Desmond is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

      **ORDERED** at Tampa, Florida, on September 9, 2016.


VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


Carl Desmond
Counsel of Record